**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**CASE NO. _____**

**MELANIE E. DAMIAN, as**
**Receiver for the Estate of Aubrey**
**Lee Price, PFG, LLC,**
**MONTGOMERY ASSET**
**MANAGEMENT, LLC f/k/a PFG**
**ASSET MANAGEMENT, LLC (Florida**
**Limited liability company),**
**MONTGOMERY ASSET**
**MANGEMENT, LLC f/k/a PFG**
**ASSET MANAGEMENT,**
**LLC (Georgia limited liability company),**
**and PFGBI, LLC,**

       **Plaintiff,**

          **v.**

**OSAMA LWIS,**

       **Defendant.**
_____/

## **COMPLAINT**

Plaintiff, Melanie E. Damian, in her capacity as the Receiver (the "Receiver") of the Estate of Aubrey Lee Price, PFG, LLC, Montgomery Asset Management, LLC f/k/a PFG Asset Management, LLC (Florida limited liability company), Montgomery Asset Management, LLC f/k/a PFG Asset Management

(Georgia limited liability company) ("Asset Management"), and PFGBI, LLC ("PFGBI,"), files this Complaint alleging claims to avoid fraudulent transfers, unjust enrichment, and conversion, and seeking declaratory relief against Defendant, OSAMA LWIS (herein the "Defendant" or "Lwis"), and alleges as follows:

## THE PARTIES

1.      Plaintiff, Melanie E. Damian, Esq. (the "Receiver"), was appointed as Receiver by the United States District Court for the Northern District of Georgia pursuant to the Court's *Order Appointing Receiver*, dated August 10, 2012 [E.C.N. No. 20] (the "Appointment Order"), in the action styled *Securities and Exchange Commission v. Aubrey Lee Price, et al*, Case No. 12-CV-2296-TCB, pending in the United States District Court, Northern District of Georgia (the "Receivership Action").  The Receivership Estate includes Aubrey Lee Price ("Price"), and the PFG Entities: PFG, LLC, PFGBI, Montgomery Asset Management, LLC f/k/a PFG Asset Management, LLC (Florida), and Montgomery Asset Management, LLC f/k/a PFG Asset Management, LLC (Georgia) (herein referred to as the "PFG Entities").

2.      At all times material hereto, Defendant, Osama Lwis, was a Syrian citizen who was domiciled and maintained his residence in Venezuela and also

2

owned real property in Kissimmee, Florida.  Lwis received the funds at issue in this action from the Receivership Defendants, who fraudulently obtained those funds from investors in Florida and Georgia before transferring them to Lwis.  In addition, Lwis has appropriated for his own benefit gains derived from the use of those funds since at least 2010.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to Title 28, United States Code, Section 754, and the principles of ancillary or supplemental jurisdiction under Title 28, United States Code, Section 1367.  This Complaint is brought to accomplish the ends sought and directed by the District Court for the Northern District of Georgia in the Receivership Action, which, among other things, appointed Plaintiff as Receiver and authorized her to commence actions to recover assets of the Receivership Estate.  Appointment Order, ¶ 44. Therefore, this action is so related to the claims in the Receivership Action, over which the District Court for the Northern District of Georgia has original jurisdiction pursuant to Title 28, United States Code, Section1331, that it forms "part of the same case or controversy under Article III of the United States Constitution." 28 U.S. C. §1367(a).  Thus, this Court's jurisdiction over this action is attributed to the jurisdiction upon which the Receivership Action rests.

3

4.     This Court has personal jurisdiction over Defendant because Defendant received transfers of funds from the Receivership Defendants, who were operating, conducting, engaging in, and carrying on a fraudulent business or business venture in, among other locations, the Northern District of Georgia. More specifically, the transfers that Defendant received from the Receivership Defendants were proceeds from this fraudulent scheme.

5.     Venue is also proper in the Northern District of Georgia pursuant to Title 28, United States Code, Section 1391(b), because a substantial part of the events or omissions giving rise to the Receiver's claims set forth herein, including the transfer of the fraud proceeds, occurred in the Northern District of Georgia. Moreover, the funds at issue come from the fraudulent scheme that the Receivership Defendants operated in this District.

### RECEIVER'S STANDING
### TO BRING THE CLAIMS ASSERTED HEREIN

6.     The Receiver has standing to bring these claims pursuant to the Appointment Order, which specifically requires the Receiver "[t]o take custody, control, title, and possession of all Receivership Property" and "to sue and collect, recover, receive, and take into possession from third parties all Receivership Property and records relevant thereto[.]" (Appointment Order at ¶¶ 7(A), (B), (H),

(I), 44).  The Receiver's claims against the Defendant herein seek to accomplish the ends sought and directed by the United States District Court for the Northern District of Georgia in the Receivership Action, which, among other things, authorized the Receiver to commence actions to recover assets of the Receivership Estate.

7.     The Receiver also has standing to bring this action pursuant to Title 28, United States Code, Section 754, which provides that "[a] receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall . . . be vested with complete jurisdiction and control of all such property with the right to take possession thereof [and] shall have capacity to sue in any district without ancillary appointment[.]"

8.     Finally, the Receiver has standing to bring claims under the Georgia Uniform Fraudulent Transfer Act ("GUFTA") by virtue of her status as a creditor pursuant to the Uniform Commercial Code, Section 18-2-71, Georgia Code Annotated ("Statutory Creditor").

## GENERAL ALLEGATIONS

9.     Pursuant to the Appointment Order, Plaintiff is authorized to investigate the affairs of the Receivership Defendants, to marshal and safeguard the assets of these entities, and to institute legal proceedings for the benefit and on

behalf of the Receivership Defendants' investors and other creditors.  *See* Appointment Order, ¶¶ 7, 18, 19, 44.  Such actions may be brought against individuals or entities which the Receiver has determined have improperly received funds traceable from investors defrauded by the Receivership Defendants, including but not limited to actions seeking constructive trusts, disgorgement of profits, and recovery and avoidance of fraudulent transfers. *Id*.

10.    In addition, the Appointment Order authorizes Plaintiff to "bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his/her duties as Receiver." *See* Appointment Order ¶7, J.

### *Background Of Receivership Entities*

11.    Between 2009 and July 2012, Aubrey Lee Price, through and with the PFG Entities, raised more than $50 million from approximately 115 investors in Georgia and Florida through the sale of membership interests in PFG and PFGBI. Price and the PFG Entities assured investors that they would use the money to trade in securities and for other investments on their behalf.

12.    PFG offering documents represented to investors that their funds would be held in an investment account at Goldman Sachs Execution and Clearing LC ("Goldman Sachs").   Approximately $36 million dollars was placed in a

Goldman Sachs securities trading account.  The account suffered massive losses, through bad investments in equity securities and in real estate and illiquid assets, including farms and equipment in Venezuela. Throughout this time, Mr. Price prepared account statements to investors indicating false investment returns.

### *The Receivership Defendants' Purchases Of Property In Venezuela And Business Dealings With The Defendant.*

13.     Among the many investments for which the Receivership Defendants used investor funds were numerous purchases of real property.  Specifically and most relevant to this lawsuit, the Receivership Defendants purchased property, including operating farms, farming equipment, and farming rights, in Venezuela, which property was collectively valued at approximately $2,700,000.  As a result of purchases using investor funds, Mr. Price and/or other Receivership Defendants owned or had ownership interest in two separate farms which are at issue here – one that harvested primarily corn and another that harvested primarily sugar cane.

14.     Price used investor funds to purchase the first, primarily a corn farm, known as "La Yaguarita", located in the State of Portuguesa, Venezuela, for approximately $1,140,000.  Hundreds of thousands of additional dollars were then spent on farm equipment, which remain as part of the farm.  Price purchased the farm jointly in his name and in Defendant Lwis' name, although Lwis appears to

have contributed none of the funds and claims no legitimate ownership interest. The Receiver is attempting to sell the corn farm for the benefit of the Receivership Estate and, meanwhile, continues to oversee its operations to assure that profits from its harvests benefit the Receivership Estate.

15.     Also using investor funds, Price purchased a land lease permitting the right to farm the second farm, a sugar cane farm, located in Paujicito, State of Portuguesa, Venezuela, for approximately $625,000.   Defendant Lwis was responsible for overseeing the operations of the farm.  Defendant Lwis told the Receiver and her representatives that there was no production from the sugar cane farm and, therefore, Defendant Lwis has not paid the Receiver any proceeds from harvests of the sugar cane farm.  However, the Receiver subsequently learned from her representatives in Venezuela that there had, in fact, been production in all of the years from 2010 through 2013 and that Defendant Lwis misappropriated all of the money derived from the sale of the crops for himself.

16.     Defendant Lwis also now asserts ownership of the sugar cane farm, although Defendant Lwis contributed no funds toward the purchase of the farm. Price used Receivership funds to purchase the sugar cane farm.

17.     After the transfers of investor funds by Price and the PFG Entities to purchase the sugar cane farm, the value of the PFG Entities' remaining assets was

8

insufficient to pay all of the PFG Entities' debts and obligations (*i.e.*, at all material times, the PFG Entities were insolvent).

18.    When interviewed by the Receiver and her representatives in Orlando, Florida and Venezuela, Defendant Lwis stated that Price had sold the sugar farm to him (Lwis) for $600,000.  Lwis also claimed that he paid Price a portion of the purchase price for the farm both in cash and by transferring his interest in a condominium in Kissimmee, Florida, to Price.  However, Lwis provided no documentation to support his claim that he paid Price for the sugar cane farm, and a thorough review of all Receivership Entities' books and records does not support Lwis' claims.  Further, Price confirmed that Lwis has not paid any of the $600,000 promised to purchase the farm.  Meanwhile, Defendant Lwis has been operating the sugar cane farm and keeping all of the proceeds from the sale of its harvests for at least four years.

19.    In March 2013, Defendant Lwis entered into a contract to sell his condominium in Kissimmee, Florida, and he agreed to transfer the net proceeds of the sale to the Receiver.  However, the net proceeds of the sale of the condominium were approximately $4,600.  Lwis still owes the Receivership for the remaining cost of the sugar cane farm, of which he claims ownership.

9

20.    Defendant Lwis also owes the Receivership the value of the proceeds which Lwis misappropriated from the sale of the sugar cane farm crops in the years 2010 through 2013.  The Receiver's representatives in Venezuela have reviewed the records relating to the sales of the crops from the sugar cane farm for the years 2010 to 2013 and have determined that the proceeds from those sales which were misappropriated by Defendant Lwis were approximately $500,000.

### The Receiver Is Entitled To The Return Of Funds And Properties Which Were Improperly Transferred To Or Taken By Defendant Lwis.

21.    By misappropriating investor funds and making false statements, either directly or indirectly, to investors regarding, among other things, trading activity and profits supposedly generated from that trading, Mr. Price violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder [15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5].

22.    In addition, Defendant Lwis received ill-gotten gains or property as a result of Mr. Price's fraudulent conduct and to which he does not have a legitimate claim.

23.    The Commission brought the Enforcement Action (*Securities and Exchange Commission v. Aubrey Lee Price, et al*, Case No. 12-CV-2296-TCB) in the Northern District of Georgia, seeking, among other things, to enjoin the

Receivership Defendants' unlawful acts and to recover the investors' funds. Initially, the Commission sought the entry of a Temporary Restraining Order and the appointment of the Receiver.

24.    One of the duties of the Receiver is to bring claims against third parties on behalf of the Receivership Estate for the benefit of the Receivership Entities' creditors and investors.  This lawsuit is brought pursuant to that duty.

25.    Accordingly, the Receiver brings the instant action to recover funds from Defendant Osama Lwis, who was unjustly enriched as the result of transfers from the Receivership Estate.  The Receiver also brings this action pursuant to the Georgia Uniform Fraudulent Transfer Act, Section 18-2-71, *et seq.* of the Georgia Code Annotated, in order to collect monies that the Receivership Defendants fraudulently transferred to Defendant Lwis. Finally, the Receiver seeks a declaratory judgment that Lwis has no right, title or interest in either the sugar cane farm or the corn farm.

26.    All conditions precedent to the bringing of this action have been performed or satisfied or have occurred.

27.    This action is brought within the pertinent statutory limitations period.

## COUNT I
## (Fraudulent Transfer under Section 18-2-74(a)(1), Georgia Code Annotated)

28.    Plaintiff repeats and re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 27 of this Complaint as if fully set forth herein.

29.    This is a claim to avoid and recover fraudulent transfers pursuant to Sections 18-2-74(a)(1) and 18-2-77, Georgia Code Annotated, against Defendant, Osama Lwis.

30.    As detailed above, Lwis claims the Receivership Defendants transferred to Defendant Lwis a sugar cane farm in Venezuela, which farm had been previously purchased by the Receivership Defendants for approximately $625,000 and which includes improvements and equipment on the farm valued at an additional approximately $125,000.  As also detailed above, Defendant Lwis received and kept the profits from the sales of crops harvested from the sugar farm for the years 2010 to 2013, which had a value of approximately $500,000. Defendant Lwis paid nothing to the Receivership Defendants in exchange for the above-described transfers.

31.    At the time of the transfers, Receivership Defendant Aubrey Lee Price was operating a Ponzi scheme and had the actual intent to delay, hinder, or defraud

creditors, and he made the transfers to delay, hinder, or defraud creditors.  Thus, the transfers were inherently fraudulent, and the Receiver may avoid the transfers pursuant to Sections 18-2-74(a)(1) and 18-2-77, Georgia Code Annotated.

32.    The Receiver lacks an adequate remedy at law because, unless the relief sought herein is granted, the Receiver will be unable to recover the sum of up to approximately $1,250,000 in funds belonging to investors that the Receivership Defendants fraudulently transferred to Defendant Lwis.

33.    As a direct and proximate result of the Receivership Defendants' fraudulent transfers to Defendant Lwis, the Receivership Estate has been diminished in the amount of $1,250,000 in investor funds, which includes the value of the sugar cane farm, improvements and equipment on the farm, and the profits that Defendant Lwis received by selling the harvests from the farm.  The Receiver is informed and believes that the remaining assets of the Receivership Estate are insufficient to pay the Receivership Estate's debts and liabilities, including, most notably, the claims of the investors who were defrauded by the Receivership Defendants.

WHEREFORE, Plaintiff, Melanie E. Damian, as the Receiver for the Receivership Defendants, hereby demands judgment against Defendant Osama Lwis as follows:  (i) determining that the transfers described herein to Defendant

Lwis were fraudulent and avoiding and allowing Plaintiff to recover the value

thereof for the benefit of the Receivership Estate, including imposing a

constructive trust and/or equitable lien on the funds or other assets traceable to

such transfers; (ii) entering a money judgment against Defendant Lwis in the

amount of $1,250,000; (iii) ordering the disgorgement by Defendant Lwis of all

profits derived from the operations of the above-mentioned farm; (iv) awarding

pre-judgment interest to Plaintiff; and (v) granting such other relief as this Court

deems appropriate and just.

## COUNT II
## (Fraudulent Transfer under Section 18-2-74(a)(2), Georgia Statutes)

34.     Plaintiff repeats and re-alleges and incorporates by reference the

allegations set forth in paragraphs 1 through 27 of this Complaint as if fully set

forth herein.

35.     This claim seeks to set aside the transfers made to Defendant Lwis

pursuant to Sections 18-2-74(a)(2) and 18-2-77, Georgia Statutes.

36.     The Receivership Defendants did not receive reasonably equivalent

value in exchange for the transfers of the sugar cane farm, more fully described

above, improvements and equipment thereon, and the harvested crops from the

farm over the last four years which were transferred to Defendant Lwis, as detailed

14

above.  Indeed, the Defendant has paid nothing to the Receivership Defendants or the Receivership Estate, and, thus, Defendant Lwis received approximately $1,250,000 from the Receivership Defendants.

37.    When the transfers to Defendant Lwis were made, the Receivership Defendants were engaged in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction.

38.    When the transfers to Defendant Lwis were made, the Receivership Defendants intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due.

39.    The Receiver lacks an adequate remedy at law because, unless the relief sought herein is granted, the Receiver will be unable to recover the sum of approximately $1,250,000 in funds belonging to investors that the Receivership Defendants fraudulently transferred to Defendant Lwis.

40.    As a direct and proximate result of the Receivership Defendants' fraudulent transfers to Defendant Lwis, the Receivership Estate has been diminished in the amount of $1,250,000 in investor funds, which includes the value of the sugar cane farm, improvements and equipment on the farm, and the approximately $500,000 profit that Defendant Lwis received by selling the harvests from the farm.  The Receiver is informed and believes that the remaining

15

assets of the Receivership Estate are insufficient to pay the Receivership Estate's debts and liabilities, including, most notably, the claims of the investors who were defrauded by the Receivership Defendants.

WHEREFORE, Plaintiff, Melanie E. Damian, as the Receiver for the Receivership Defendants, hereby demands judgment against Defendant Osama Lwis as follows:  (i) determining that the transfers described herein to Defendant Lwis were fraudulent and avoiding and allowing Plaintiff to recover the value thereof for the benefit of the Receivership Estate, including imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such transfers; (ii) entering a money judgment against Defendant Lwis, jointly and severally, in the amount of $1,250,000; (iii) ordering the disgorgement by Defendant Lwis of all profits derived from the operations of the above-mentioned farm; (iv) awarding pre-judgment interest to Plaintiff; and (v) granting such other relief as this Court deems appropriate and just.

### COUNT III
### (Unjust Enrichment)

41.    Plaintiff repeats and re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 27 of this Complaint as if fully set forth herein.

42.     This is a claim for unjust enrichment against Defendant Lwis.  This claim is asserted as an alternative assuming the statutory remedy in Section 18-2-77, Georgia Code Annotated, does not provide an adequate remedy at law.

43.     The Receivership Defendants transferred $1,250,000, in the form of the sugar farm, improvements and equipment on said farm, and the profits derived from the sale of crops harvested from said farm, to Defendant Lwis, whereas Defendant Lwis paid nothing to the Receivership Defendants or the Receivership Estate.

44.     The funds that Defendant Lwis received and accepted from the Receivership Defendants conferred benefits upon Defendant Lwis.

45.     It is inherently unfair and inequitable that the funds of other investors defrauded in the Receivership Defendants' Ponzi scheme are retained and used to personally benefit persons such as Defendant Lwis, rather than being returned to the Receivership Estate for the benefit of all of the defrauded investors.

46.     As a direct and proximate result of Defendant Lwis' retention of the $1,250,000 worth of property and profits that he received or took from the Receivership Estate after paying nothing to the Receivership Defendants, the Receivership Estate has been diminished, and, under the circumstances, equity dictates that Defendant Lwis return to the Receiver for the benefit of all of the

17

defrauded investors the profit he received from that fraudulent scheme, and any assets he may have acquired with such profit.

WHEREFORE, Plaintiff, Melanie E. Damian, as the Receiver for the Receivership Defendants, hereby demands judgment against Defendant Osama Lwis as follows:  (i) determining that the transfers described herein to Defendant Lwis were fraudulent and avoiding and allowing Plaintiff to recover the value thereof for the benefit of the Receivership Estate, including imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such transfers; (ii) entering a money judgment against Defendant Lwis, jointly and severally, in the amount of $1,250,000; (iii) ordering the disgorgement by Defendant Lwis of all profits derived from the operations of the above-mentioned farm; (iv) awarding pre-judgment interest to Plaintiff; and (v) granting such other relief as this Court deems appropriate and just.

### COUNT IV
### (Conversion of Property)

47.    Plaintiff repeats and re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 27 of this Complaint as if fully set forth herein.

48.    This is a claim for conversion of property against Defendant Lwis.

49.     As set forth in further detail above, Defendant Lwis converted for his own use the Receivership Defendants' property, that is:

a.     The sugar farm, located in Paujicito, State of Portuguesa, Venezuela, valued at $625,000;

b.     All of the equipment on the sugar cane farm, valued at approximately $125,000; and

c.     All of the profits generated from the harvest of crops on the sugar farm in 2010 through 2013, valued at approximately $500,000.

50.     The Receivership Defendants are the legal and rightful owners of all of the above-described properties.

51.     Plaintiff and her representatives have demanded that Defendant return the above-described properties or pay their value to Plaintiff, and Defendant has failed to do so.

52.     As a direct and proximate result of Defendant's retention of the $1,250,000 worth of property of the Receivership Defendants, the Receivership Estate has been diminished, and, under the circumstances, equity dictates that Defendant return to the Receiver for the benefit of all of the defrauded investors the profit he received from that fraudulent scheme, and any assets he may have acquired with such profit.

19

WHEREFORE, Plaintiff, Melanie E. Damian, as the Receiver for the Receivership Defendants, hereby demands judgment against Defendant Osama Lwis as follows:  (i) determining that Defendant Lwis improperly converted for his own use and benefit the above-described property and avoiding and allowing Plaintiff to recover the value thereof for the benefit of the Receivership Estate, including imposing a constructive trust and/or equitable lien on the property and funds so converted; (ii) entering a money judgment against Defendant Lwis, jointly and severally, in the amount of $1,250,000; (iii) ordering the disgorgement by Defendant Lwis of all profits derived from the operations of the above-mentioned farm; (iv) awarding pre-judgment interest to Plaintiff; and (v) granting such other relief as this Court deems appropriate and just.

## COUNT V
### (Declaratory Judgment)

53.    Plaintiff repeats and re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 27 of this Complaint as if fully set forth herein.

54.    This is an action for declaratory judgment pursuant to Title 28, United States Code, Section 2201, for the purpose of determining a question of actual controversy between the parties as more fully appears herein.

20

55.    As alleged above, Price purchased the corn farm using approximately $1,140,000 in investor funds, and Price subsequently invested hundreds of thousands of additional dollars for farm equipment, which remains on the corn farm.

56.    As also alleged above, Defendant contributed nothing toward the purchase of the corn farm nor the equipment on that farm, but his name remains on the deed of sale for the corn farm as a co-owner.

57.    Plaintiff has requested a release from Defendant of Defendant's interest in the corn farm but has been unable to obtain such a release from Defendant.    Therefore, although Defendant contributed nothing toward the purchase of the corn farm or the equipment thereon and has no legitimate right to or interest in the corn farm, Defendant continues to appear as a co-owner of the corn farm.  Defendant's appearance as a co-owner will disrupt Plaintiff's ability to sell the corn farm, and Plaintiff is presently attempting to sell the corn farm.

58.    Due to the fact that Defendant will not release his interest in the corn farm, Plaintiff has no other remedy available for the protection Plaintiff's rights with respect to the corn farm.

WHEREFORE, Plaintiff, Melanie E. Damian, as the Receiver for the Receivership Defendants, hereby demands that the Court enter a declaratory

judgment that (i) the Receivership Defendants are the legal and rightful owners of the corn farm, known as "La Yaguarita", located in the State of Portuguesa, Venezuela; and (ii) Defendant Lwis has no right, title, or interest in the corn farm, known as "La Yaguarita", located in the State of Portuguesa, Venezuela; and grant such other relief as this Court deems appropriate and just.

## COUNT VI
### (Declaratory Judgment)

59.    Plaintiff repeats and re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 27 of this Complaint as if fully set forth herein.

60.    This is an action for declaratory judgment pursuant to Title 28, United States Code, Section 2201, for the purpose of determining a question of actual controversy between the parties as more fully appears herein.

61.    As alleged above, Price purchased a land lease permitting the right to farm a sugar cane farm using approximately $625,000 in investor funds, and Price subsequently invested approximately $125,000 for farm equipment, which remains on the sugar cane farm.   Further, there have been crops from the sugar cane farm from 2010 through the present which have been and/or are being harvested and sold for profits.

62.    As also alleged above, Defendant contributed nothing toward the purchase of the sugar cane farm nor the equipment on that farm, but he continues to claim an interest in the farm, and he continues to sell the crops from the farm and to keep all of the profits from those sales, despite the fact that he has no legitimate ownership interest in the farm of those crops.

63.    Plaintiff has demanded a release from Defendant of Defendant's interest in the sugar cane farm but has been unable to obtain such a release from Defendant.   Therefore, although Defendant contributed nothing toward the purchase of the sugar cane farm or the equipment thereon and has no legitimate right to or interest in the sugar cane farm, Defendant continues to take profits from the sale of sugar cane from that farm.

64.    Due to the fact that Defendant will not release his interest in the sugar cane farm, Plaintiff has no other remedy available for the protection Plaintiff's rights with respect to that farm.

WHEREFORE, Plaintiff, Melanie E. Damian, as the Receiver for the Receivership Defendants, hereby demands that the Court enter a declaratory judgment that (i) the Receivership Defendants are the legal and rightful owners of the above-described sugar cane farm, located in Paujicito, State of  Portuguesa, Venezuela; and (ii) Defendant Lwis has no right, title, or interest in that sugar cane

23

farm, located in Paujicito, State of  Portuguesa, Venezuela;; and grant such other relief as this Court deems appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated this 14<u>th</u>  day of <u>July</u>, 2014.

Respectfully Submitted,

<u>/s/Andrew E. Worrell</u>
Andrew Worrell
Georgia Bar No.: 311027
PETITT WORRELL CRAINE
WOLFE, LLC
*Co-Counsel for the Plaintiff*
Suite 1030, One Glenlake
1 Glenlake Parkway
Atlanta, GA 30328
Telephone: 404-249-7480
Facsimile: 404-442-4463
Email: Andrew@petittworrell.com

DAMIAN & VALORI, LLP
*Counsel for Receiver,*
*Melanie E. Damian*
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone:  305-371-3960
Facsimile:  305-371-3965
<u>/s/Melissa Damian Visconti</u>
Melissa Damian Visconti, P.A.
Florida Bar No. 0068063
Email: mvisconti@dvllp.com
*(pro hac vice application forthcoming)*

24